WESTERN UNION TELEGRAPH CO. v. LOUISVILLE & N. R. CO.

(Circuit Court of Appeals, Fifth Circuit. January 2, 1917).

No. 2897.

1. TELEGRAPHS AND TELEPHONES ☞11—RIGHT OF WAY—DEED—CONSTRUCTION.

A deed from a railroad company, which had theretofore owned the telegraph lines along its right of way, conveying to a telegraph company that property, together with a right and license to operate, repair, and renew the lines along the right of way, to have and to hold unto the telegraph company, its successors and assigns, forever, conveyed a perpetual right to the use of the railroad right of way for the telegraph line.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 7; Dec. Dig. ☞11.]

2. CONTRACTS ☞164—CONSTRUING INSTRUMENTS TOGETHER—CONTRACT AND DEED.

Where a contract between the parties to a deed conveying telegraph property, and an easement along a railroad right of way was dated one week later than the date of the deed, but recited that the telegraph company had, by a conveyance of even date therewith, purchased from the railroad company its telegraphic lines, the purchase having been made on condition that a working agreement between the parties be entered into, the contract and deed will be construed as parts of one transaction.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 746–748; Dec. Dig. ☞164.]

3. TELEGRAPHS AND TELEPHONES ☞11—RIGHT OF WAY—CONTRACT—CONSTRUCTION.

The fact that the recital spoke of the conveyance as a conveyance of the telegraph property, without mentioning the easement, does not indicate that the parties intended to change the plain provisions of the deed.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 7; Dec. Dig. ☞11.]

4. TELEGRAPHS AND TELEPHONES ☞11—RIGHT OF WAY—CONTRACT—CONSTRUCTION.

Nor did a provision of that contract that it should extend to all roads owned, leased, or operated by the railroad company, and should continue for a term of 25 years, and that, so far as it legally could, the railroad company granted and agreed to assure to the telegraph company an exclusive right of way on its lines, limit the absolute conveyance of the right of way, since it applied to property other than that conveyed.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 7; Dec. Dig. ☞11.]

5. TELEGRAPHS AND TELEPHONES ☞11—RIGHT OF WAY—AGREEMENT—SUBSEQUENT ACQUISITION BY ANOTHER COMPANY.

Where the railroad affected by that conveyance and contract was subsequently acquired by another company, with which the telegraph company had a similar, but earlier, agreement for the use of its right of way for a telegraph line for 25 years, which agreement provided that it should supersede a named agreement between the same parties, and all other agreements between parties or their respective predecessors in ownership or control of the respective properties, the latter agreement superseded the contract, but not the deed of conveyance.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 7; Dec. Dig. ☞11.]

6. INJUNCTION ☞118(2)—BILL—CONCLUSIONS OF LAW.

In a bill to restrain a railroad company from interfering with plaintiff's telegraph lines along its right of way, allegations that plaintiff was seised of an irrevocable, perpetual, and assignable easement are mere statements of legal conclusions, which furnish no support for plaintiff's claims, except as they are sustained by facts alleged.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 233; Dec. Dig. ☞118(2).]

7. TELEGRAPHS AND TELEPHONES ☞11—RIGHT OF WAY—CONTRACT—DURATION.

In a contract giving a telegraph company the right to maintain its lines along a railroad right of way for 25 years, a provision that it was understood that the wires covered by the company should form a part of the general system of the telegraph company, and as such in the department of commercial or public business should be regulated by the tele-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

graph company, will not be construed as giving the telegraph company a perpetual right to use the railroad right of way.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig, § 7; Dec. Dig. ☞11.]

8. TELEGRAPHS AND TELEPHONES ☞11—RIGHT OF WAY—ACT OF CONGRESS.

Rev. St. § 5263 et seq. (Comp. St. 1913, § 10072 et seq.), giving telegraph companies the right to construct and operate their lines along military or post roads, do not purport to divest property rights without purchase or condemnation, and therefore do not give a telegraph company the right, without purchase or condemnation, to maintain its lines along a railroad right of way.

[Ed. Note.—For other cases, see Telegraph and Telephones, Cent. Dig, § 7; Dec. Dig. ☞11.]

9. INJUNCTION ☞113—INJURY—DELAY OF PLAINTIFF.

Where a railroad company had given a telegraph company notice to remove its wires from the railroad right of way in accordance with the terms of a contract between them, and had waited three years without attempting to enforce its notice, during which time the telegraph company had taken no steps to condemn the right to maintain its wires, the telegraph company cannot have the railroad enjoined from interfering with its wires, since the necessity for such injunction is due solely to its own want of diligence.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 198–201; Dec. Dig. ☞113.]

10. INJUNCTION ☞199—INCIDENTAL RELIEF—CONDEMNATION.

Where a telegraph company, which has been maintaining its line along a railroad right of way under a contract which has expired, is threatened by the railroad company with the removal of its wires, which would prevent the operation of its business, a court of equity can protect such business from disturbance on payment of full compensation to the railroad company, and in the same suit can make a complete and final disposition of the entire controversy and the relations of the parties.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 419; Dec. Dig. ☞199.]

Appeal from the District Court of the United States for the Northern District of Georgia; William T. Newman, Judge.

Suit by the Western Union Telegraph Company against the Louisville & Nashville Railroad Company. Decree dismissing the bill (229 Fed. 234), and plaintiff appeals. Reversed.

Arthur Heyman, of Atlanta, Ga., and W. L. Clay, of Savannah, Ga., for appellant.

Henry L. Stone, of Louisville, Ky., and Henry C. Peeples, of Atlanta, Ga., for appellee.

Before PARDEE and WALKER, Circuit Judges, and GRUBB, District Judge.

WALKER, Circuit Judge. The bill in this case was filed by the appellant, the Western Union Telegraph Company, against the appellee, the Louisville & Nashville Railroad Company, on the 15th day of April, 1915. Its averments showed that at the time the bill was filed, and for a number of years prior to that date, the plaintiff had telegraph lines on the rights of way of specified railroads in Georgia which were owned or controlled by the defendant, and used such rights of way and

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

buildings, offices, stations, and premises of the defendant in the conduct of its telegraph business, and that on or about August 5, 1912, the defendant notified the plaintiff that on and after August 17, 1912, the use and occupation of its railroad rights of way or any part thereof, and its stations, buildings, and offices by the plaintiff for a telegraph line would be without the permission and against the consent of the defendant, and notified the plaintiff to vacate the defendant's railroad rights of way, buildings, offices, stations, and premises, and to commence to remove therefrom immediately after August 17, 1912, and not later than September 1, 1912, all of the plaintiff's telegraph lines, and all poles, wires, cross-arms, batteries, instruments, appliances, and fixtures appurtenant and belonging thereto, and to complete the removal thereof prior to December 1, 1912, and that in the event of the plaintiff's failure to comply with this demand the defendant would take possession, appropriate, and use said poles, cross-arms, wires, batteries, instruments, appliances, and other fixtures, or so much thereof as may on and after December 1, 1912, be or remain on defendant's rights of way or premises, and would use, operate, maintain, or otherwise dispose of the same as defendant's own property, and refuse to longer permit the plaintiff to remove or use the same in any manner or for any purpose.

The bill asserted that on and prior to August 5, 1912, the plaintiff was, and at the present time is, seised and possessed of irrevocable, perpetual, assignable easements or rights for the construction, maintenance, and operation of said telegraph lines upon, along, or over the mentioned railroad rights of way of the defendant, and to continue to use the defendant's rights of way in the operation of its telegraph business, and prayed that the defendant be restrained and enjoined from interfering with, obstructing, or impeding the enjoyment by the plaintiff of the rights and easements so claimed by it, and prayed further that, if the court should determine that the plaintiff's rights and easements in the defendant's rights of way were not irrevocable and perpetual, and that the defendant is entitled to compensation therefor, a decree be rendered in this cause determining the amount of compensation the defendant is entitled to receive from the plaintiff therefor, or, in the event that it should be adjudged that such compensation should not, or cannot, be fixed and decreed in this cause, that the plaintiff be permitted to institute appropriate proceedings for the purpose of fixing and determining such compensation, and that, pending such proceedings, the defendant be restrained and enjoined from interfering with, obstructing, or impeding the enjoyment by the plaintiff of the use for its telegraph business of the defendant's rights of way and premises. The bill also contained a prayer for such other or further relief as the nature of the case may require or that equity may afford. On motion of the defendant the bill was dismissed, and a restraining order which had been made was vacated. The appeal is from the decree to this effect.

The railroads of the defendant, which the plaintiff claims are subject to the easements and rights in its favor asserted by the bill are the lines in Georgia which the defendant, in the year 1902, purchased from

the Atlanta, Knoxville & Northern Railway Company, being lines extending from Marietta, Blue Ridge, and Cartersville northwardly in the direction of Knoxville, Tenn., and northeastwardly to the Tennessee state line, in the direction of Murphy, N. C., and also the line extending from Junta, in Bartow county, northwardly through the counties of Bartow, Gordon, and Murray to the northern boundary line of Georgia, on or along the right of way of which line the plaintiff constructed a telegraph line in 1905.

[1] The averments of the bill show that the Atlanta, Knoxville & Northern Railway Company, several years prior to the sale of its properties to the defendant, acquired the ownership of telegraph lines which had been constructed on its railroad rights of way extending from Marietta northwardly through Blue Ridge to the state line, and from Blue Ridge northwestwardly to the state line, and that in the year 1898 it sold and by deed, a copy of which is made an exhibit to the bill, duly conveyed to the plaintiff that telegraph property "together with full right and license to maintain, operate, repair, and renew the said lines upon and along the right of way of said Railway Company, to have and to hold the same unto said Western Union Telegraph Company, its successors and assigns, to and for its and their use and behoof forever." The grantor in this deed was the owner of the telegraph property described in it, and also of the railroad rights of way upon which that property was then located and used. The deed as plainly embraced and conveyed, without reservation or limitation of time, the right to make the specified use of the grantor's described railroad rights of way as it did the telegraph lines and properties enumerated. That deed sufficiently supports the plaintiff's claim that it is the owner of such an easement as is asserted to exist in its favor with reference to the railroad rights of way described in it, unless that instrument has been deprived of the effect which its terms import as a result of one or both of two contracts, copies of which are made exhibits to the bill, which the plaintiff entered into, one between the plaintiff and the grantor in that deed, and the other between the plaintiff and the defendant in this case, which subsequently purchased from the grantor in that deed.

[2] The mentioned deed to the plaintiff was executed on the 9th day of February, 1898, and the contract between the plaintiff and the grantor in that deed purports to have been made on the 16th day of February, 1898; but that contract contains this recital:

"That whereas, the telegraph company has by conveyance of even date herewith purchased the telegraph lines along the railway company's railroads from Knoxville, Tenn., to Marietta, Ga., and from Blue Ridge, Ga., to Murphy, N. C., said purchase having been made on condition that a working agreement be entered into between the parties hereto, covering said railroads and said telegraph lines, and any extensions or branches of said railroads, and any railroads hereafter owned, leased, or controlled by the railway company party hereto."

While the two instruments bear different dates of execution, yet as the recital quoted shows that the parties to them treated them as contemporaneously executed, and that the one was made on the condition that the other would be made, it may be assumed that they should be

treated and construed as parts of one transaction. The contract provided that:

"The provisions of this agreement shall extend to all railroads now owned, leased, controlled, or operated, and to all railroads hereafter owned, leased, controlled, or operated, by the railway company, or by any company or corporation in which the railway company may own a majority of the stock, or whose action it may be able to control, by the ownership of stock or otherwise; and the provisions of this agreement shall be and continue in force for and during the term of twenty-five (25) years from the twelfth (12th) day of February, 1898, and shall continue after the close of said term until the expiration of one (1) year after written notice shall have been given after the close of said term by either party to the other of an intention to terminate the same, and in case of any disagreement concerning the true intent and meaning of any of said provisions, the subject of such difference shall be referred to three arbitrators, one to be chosen by each party hereto, and the third by the two others chosen, and the decision of such arbitrators, or of a majority thereof, shall be final and conclusive."

It contained sundry provisions to govern the rights and obligations of the respective parties in the transaction of the business provided for, among them the following:

"The railway company, so far as it legally may, hereby grants and agrees to assure to the telegraph company the exclusive right of way on, along, and under the line, lands, and bridges of the railway company, and any extensions and branches thereof, for the construction, maintenance, operation, and use of lines of poles and wires and underground or other lines for commercial or public telegraph and telephone uses or business, with the right to put up or construct, or cause to be put up or constructed, from time to time, such additional wires and such additional lines of poles and wires and underground or other lines as the telegraph company may deem expedient."

[3] It is not deemed necessary to set out other provisions contained in that contract. The fact that in its recital above quoted the deed was mentioned as a conveyance of "the telegraph lines along the railway company's railroads" named is not enough to show an intention of the parties to change or modify in any respect the deed as it was written and executed, or to cancel it or render it inoperative in so far as it was a conveyance, without limitation as to time, of a "full right and license to maintain, operate, repair and renew the said lines upon and along the right of way of said railway company."

[4] Nor is an intention of the parties to change in any respect the effect which the plain language of the deed imports to be inferred from the provisions of the contract by which the railway company granted, and obligated itself to assure, to the plaintiff, so far as it legally could do so, the exclusive right of way, for the construction, maintenance, operation, and use of lines of poles and wires for telegraph and telephone uses or business, along and under the line, lands, and bridges of all railroads owned, leased, controlled, or operated by the railway company at the time the contract was entered into, and of all railroads that thereafter might be owned, leased, controlled, or operated by it, or by any company or corporation whose action it might be able to control. These provisions are not at all inconsistent with the retention by the telegraph company of the easement in or over specified lines of railroad which was conveyed to it by the railway company's deed.

As to the lines of railroad described in the contract, the railway com-

pany thereby undertook, so far as it legally could do so, to make the telegraph company's right an exclusive one during the period covered by the contract, and also enlarged its right to use and occupy by making it cover telephone as well as telegraph uses or business. The provisions of the contract specifying the rights of use and occupation to be enjoyed by the telegraph company were general ones, intended to apply to all lines of railroad owned or controlled by the railway company during any part of the period covered by the contract, and to facilitate the performance by the telegraph company of the obligations which the contract imposed upon it. The granting by the railway company for the limited period of the contract of a right to make use of its property of a broader scope than that which its deed had conveyed in perpetuity cannot be given the effect of divesting any interest or estate which passed by that deed. The conclusion is that nothing contained in the bill shows that the plaintiff's right to occupy and use railroad property conferred by that deed had been relinquished or divested prior to the acquisition by the defendant of the properties of the Atlanta, Knoxville & Northern Railway Company.

[5] An effect of this purchase by the defendant was to make applicable to the property purchased the provisions of a contract entered into between the plaintiff and the defendant on the 18th day of June, 1884, which by its terms was to cover and embrace all the railroad lines owned, leased, controlled, or operated by the defendant at the time the contract was entered into, and any branch or branches that might be constructed by the defendant, and any other railroad or railroads acquired by it by lease or purchase, or that might be controlled or operated by it during the existence of the contract, should it be lawfully competent to include it or them. That contract commenced with this recital:

"Witnesseth, whereas, the operation of the telegraph company's lines along the various railroads owned, controlled, or operated by the railroad company has been conducted under the provisions of an agreement between the parties hereto, dated May 14, 1880, which agreement provides that it may be terminated on one year's written notice after July 1, 1885."

And it contained the following provision:

"The provisions of this agreement shall supersede said agreement hereinbefore mentioned and all other agreements between the parties hereto, or their respective predecessors in ownership or control of their respective properties; and the provisions of this agreement shall be and continue in force for and during the term of twenty-five (25) years from and after the first (1st) day of July, eighteen hundred and eighty-four (1884), and thereafter until the expiration of one year after written notice shall have been given by one of the parties hereto to the other of a desire or intention to terminate the same, and in case of any disagreement concerning the true intent and meaning of any of said provisions the subject of such difference shall be referred to three arbitrators, one to be chosen by each party hereto, and the third by the two others chosen, and the decision of such arbitrators, or a majority thereof, shall be final and conclusive."

It also contained, with other provisions governing the relations of the contracting parties in the conduct of the business provided for, not claimed or considered to have any bearing on any question involved in this case, the following:

"The railroad company, so far as it legally may, hereby grants and agrees to assure the telegraph company the exclusive right of way on and along the line, lands, and bridges of all roads now owned, leased, controlled, or operated by said railroad company, or which it may hereafter own, lease, control, or operate, for the construction and use of such lines of poles and wires or underground wires for commercial or public uses or business as the telegraph company may require, together with the exclusive right to maintain offices in its depots for commercial telegraph business. * * *".

In the District Court, as is shown by the opinion rendered by Judge Newman (Western Union Telegraph Co. v. Louisville & Nashville R. Co., 229 Fed. 234), the view prevailed that the question of the right of the plaintiff to remain upon or use any rights of way or other property of the defendant was controlled solely by the contract just quoted from, and that the rights conferred by that contract had expired by the lapse of the time during which they were to be enjoyed. We infer that the opinion was entertained that the above-quoted stipulation, that "the provisions of this agreement shall supersede said agreement heretofore mentioned and all other agreements between the parties hereto, or their respective predecessors in ownership or control of their respective properties," by itself, or in connection with the provision of the contract specifying the rights of use and occupation to be enjoyed by the plaintiff, had the effect of annulling or destroying the right and license conveyed to the plaintiff by the Atlanta, Knoxville & Northern Railway Company's deed to it. For reasons sufficiently indicated by what has been said above in discussing a quite similar provision of the plaintiff's contract with the defendant's grantor, we are not of opinion that the provision for an exclusive right of way contained in its contract with the defendant operated to impair any interest conveyed by that grantor's deed to the plaintiff. The stipulation in the contract that "the provisions of this agreement shall supersede said agreement hereinbefore mentioned, and all other agreements between the parties hereto or their respective predecessors in ownership or control of their respective properties," plainly had the effect of superseding the above-mentioned agreement between the plaintiff and the Atlanta, Knoxville & Northern Railway Company, the defendant's predecessor in the ownership of part of the railroads in question; but that stipulation would bring about a result which the language used in it does not indicate was contemplated by the contracting parties, if it is allowed to operate to deprive the telegraph company, not only of such rights as were conferred by a previous contract, but of a property interest bought, paid for, and duly conveyed to it before either the superseded or the superseding agreement was made.

Nothing was purported to be superseded except certain "agreements" which were referred to. The only agreements, the terms of which are disclosed, are the two already mentioned, copies of which are made exhibits to the bill, one between the plaintiff and the defendant, and the other between the plaintiff and a grantor of the defendant. The only other agreement mentioned is one between the plaintiff and the defendant, dated May 14, 1880, the terms of which are not disclosed further than by a recital above quoted from the agreement which superseded that one. It may be inferred from that recital that that agreement was

similar in its general scope and purpose to the two which are set out, in that each of them defined and governed the respective rights and obligations of the parties to an arrangement between a railroad company and a telegraph company for the conduct during a defined period of time of a telegraph business over the rights of way and upon the premises of the railroad company. A stipulation in one agreement that other previously existing agreements are superseded does not, in the absence of other language indicating that such was the intention of the parties, deprive a contracting party of property or the use of it not acquired or conferred by any agreement referred to, but vested and owned by a purchase and conveyance which no agreement referred to purported to disturb or impair. The above-mentioned deed to the plaintiff is an instrument distinctly different from the "agreements" referred to in the stipulation, and it cannot be supposed that it or its operation was intended to be affected by that stipulation. Our conclusion is that that stipulation cannot properly be given the effect of defeating or divesting any property interest conveyed to the plaintiff by the deed mentioned, and that nothing contained in the bill shows that that interest has been relinquished or divested.

[6] With reference to all the railroad rights of way and other properties claimed to be subject to an easement in favor of the plaintiff, both those described in the above-mentioned deed and those not covered by that deed, the bill contains assertions to the effect that the plaintiff was and is seized and possessed of irrevocable, perpetual, and assignable easements or rights for the construction, maintenance, and operation of telegraph lines and the conduct of a telegraph business. These assertions are no more than statements of the pleaders' opinions or legal conclusions, and, except in so far as they are sustained by facts and circumstances set forth, they furnish no support for the claims made by the bill. Fogg v. Blair, 139 U. S. 118, 11 Sup. Ct. 476, 35 L. Ed. 104; Gould v. Evansville, etc., R. R. Co., 91 U. S. 528, 536, 23 L. Ed. 416.

[7] The contract of June 18, 1884, is relied on to support the claim made, especially the provision of it conferring rights to use and occupy railroad property, taken in connection with the provision that:

"It is mutually understood and agreed that the telegraph lines and wires covered by this contract shall form part of the general system of the telegraph company, and as such in the department of commercial or public telegraph business shall be controlled and regulated by it, the telegraph company fixing and determining all tariffs for the transmission of messages and all connections with other lines."

The nature of the contract creates a presumption against the correctness of a construction of any provision of it under which such provision would remain effective beyond the period during which the contract was to be in existence. The contract is one between a railroad company and a telegraph company for the conduct of a telegraph business on the railroad company's property for a limited period of time. Presumably any right conferred by such a contract on the telegraph company to use or occupy railroad property was given only in order to promote the purposes of the contract, and was intended to last only so long as the relations between the parties established by the contract

existed. In the absence of a clear expression of a different meaning, no provision of such a contract can be regarded as being still effective after the whole of it has ceased to be in existence. The provision to the effect that the telegraph lines and wires covered by the contract between the plaintiff and defendant shall form part of the general system of the plaintiff was completely executed, if such lines and wires were, during the period covered by the contract, permitted by the defendant to be so used on or in connection with its property by the plaintiff as to form part of the general system of the plaintiff. Nothing contained in that provision, or in any other provision of the contract indicates an intention to confer a right or impose a burden that would outlast the contract itself.

No facts stated in the bill, other than what is disclosed by the above-mentioned deed to the plaintiff, support a conclusion that any right to occupy or use the defendant's property which had been conferred on the plaintiff by contract or conveyance, or by the conduct of the parties, or their respective predecessors, was in existence at the time the bill was filed.

[8] With reference to the feature of the bill which shows that the act of Congress of July 24, 1866 (Rev. Stat. § 5263 et seq. [Comp. St. 1913, § 10072 et seq.]), giving telegraph companies the right to construct and operate their lines through, along, and over the public domain, military or post roads, and navigable waters of the United States was relied on as a support for the claims asserted, it is not deemed necessary to say more than that we concur in the conclusions as to the operation of that statute which were expressed by Judge Newman in the opinions rendered in this case and in another case in which that statute was relied on to support a similar claim. Western Union Telegraph Co. v. Louisville & Nashville R. Co. (D. C.) 229 Fed. 234; Western Union Telegraph Co. v. Atlanta & W. P. R. Co. (D. C.) 227 Fed. 465. That statute does not purport to effect a divestiture of property rights or interests without purchase or condemnation or in some other recognized way by which one lawfully may acquire what had belonged to another.

[9] As above stated, the notice to the plaintiff to vacate the defendant's premises and remove its properties therefrom was given on August 5, 1912, and the terms of the notice indicated the absence of any intention on the part of the defendant to take action itself to remove or use any property of the defendant prior to December 1, 1912. It is not made to appear that the defendant took any such action during the period of nearly three years which elapsed between the time the notice to remove was given and the date of the filing of the bill. Nor is it made to appear that the plaintiff was without legal remedy to acquire by condemnation rights in and over the defendant's properties necessary or appropriate for the conduct of a telegraph business thereon, or that that remedy was in any respect incomplete or inadequate, or that within the time it has been suffered to remain upon and use the defendant's properties the plaintiff could not, by exercising due diligence, have completely effected the acquisition of the desired and required easements and rights.

[10] If in any case where the relations of the parties are such as are shown to have existed between the plaintiff and the defendant, it is competent for a court of equity, upon full and adequate compensation being made, to protect from disturbance such possession as the plaintiff has, and, in the suit in which this is done, make complete and final disposition of the entire controversy arising out of the situation and the relations of the parties (see New York City v. Pine, 185 U. S. 93, 22 Sup. Ct. 592, 46 L. Ed. 820, and Western Union Telegraph Co. v. Ann Arbor R. Co., 90 Fed. 379, 30 C. C. A. 113), the facts averred in the bill in the pending case fall short of showing that it is such a one. It well may be inferred from the averments of the bill, and its lack of averments, that, if the plaintiff had exercised any diligence at all, it could, long before the bill was filed, have acquired by legal proceedings available to it the required rights and easements in the defendant's properties which it has continued to occupy and use after all rights it had therein had ceased to exist. Equitable remedies are not open to a party where the occasion or necessity of his resort thereto is attributable to his own unexplained failure diligently to pursue complete and adequate legal remedies available to him.

The execution by the defendant of its expressed purpose to exclude the plaintiff from the occupation or use of any of its railroad rights of way or other premises, and to appropriate properties of the plaintiff not removed by the latter, would involve an invasion of rights conferred on the plaintiff by the above-mentioned deed to it, and cause an interruption of the plaintiff's business and a probable consequent loss of profits, the injury and damage from which it is not to be supposed could fully and adequately be compensated for at law. The part of the bill which disclosed the existence and threatened invasion of the rights just referred to was enough to make the motion to dismiss it not properly grantable.

It follows that the decree appealed from should be reversed; and it is so ordered—the plaintiff to have leave to amend its bill, as it may be advised, to make a further and better statement of the nature of part of the claim relied on.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes