WESTERN UNION TELEGRAPH CO. v. LOUISVILLE & N. R. CO.

(Circuit Court of Appeals, Fifth Circuit.    April 2, 1918.)

No. 3137.

1. EQUITY ⟐141(1)—PLEADING—BILL.

As the purpose of a pleading is to raise or meet issues of law or fact, and equity rule 25 (198 Fed. xxv, 115 C. C. A. xxv) provides for a simple statement of the ultimate facts, while rule 21 (198 Fed. xxiv, 115 C. C. A. xxiv) authorizes striking out of redundant or impertinent matter, statements of law, statutory and customary, accompanied by copious references to decisions, should not be included in a bill.

2. TELEGRAPHS AND TELEPHONES ⟐11—RIGHTS OF WAY—OWNERSHIP.

Under a contract which was subject to termination by the parties, a telegraph company established its lines on the right of way of a railroad company. Thereafter the telegraph company terminated the contract, attempting to condemn an easement for its line. Condemnation was enjoined by the Georgia state court; the railroad company asserting its desire to construct a telegraph line for railroad purposes and its paramount right to that part of the right of way occupied by the telegraph company. Thereafter the telegraph company filed a bill in federal court, asserting in the alternative its paramount right to the line already occupied. Held that, while an owner of property may estop himself by standing by and allowing an intruder to improve the property for the use for which it was taken, and the fact that the intruder is a public service corporation should be considered, yet, as the telegraph company entered under contract, and the railroad company, at all times after termination of contract and defeat of the condemnation proceedings, asserted its paramount right to the premises, the telegraph company is not entitled to the easement as against a railroad company.

3. JUDGMENT ⟐828(3)—STATE COURT—EFFECT IN FEDERAL COURT.

In such case, where the good faith of railroad company's exercise of its paramount preferential right to use for its own telegraph business the premises formerly used by the telegraph company was not negatived, a federal equity court is without jurisdiction to entertain condemnation proceedings for an easement of the telegraph line.

4. EMINENT DOMAIN ⟐187—POSSESSION PENDING PROCEEDINGS—PROTECTION.

In such case the difficulties experienced by the telegraph company in its efforts to condemn any easement for its telegraph line held not to warrant an injunction, restraining the railroad company from interfering with or obstructing telegraph company's use of the easement, of which it had possession, pending condemnation.

5. CORPORATIONS ⟐382½, New, vol. 16 Key-No. Series—PUBLIC SERVICE CORPORATION—RIGHTS.

A public service corporation, occupying property by permission or as a tenant, is subject to the same rules applicable to private persons.

6. LANDLORD AND TENANT ⟐61—LICENSES ⟐51—ESTOPPEL TO DISPUTE TITLE.

One who occupies land permissively or as a tenant is estopped from disputing the title of licensor or lessor, and must surrender possession before he can assume a hostile attitude.

7. EMINENT DOMAIN ⟐167(4)—COMPLIANCE WITH STATUTES.

The right of condemnation, being purely statutory, can be enforced only in compliance with the conditions and requirements prescribed by statute.

⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Northern District of Georgia; William T. Newman, Judge.

Bill by the Western Union Telegraph Company against the Louisville & Nashville Railroad Company. From a decree striking an amendment from the bill, and dismissing the bill ·as amended (243 Fed. 687), complainant appeals. Affirmed.

Arthur Heyman, of Atlanta, Ga., and Wm. L. Clay, of Savannah, Ga. (Rush Taggart and Albert T. Benedict, both of New York City, on the brief), for appellant.

Henry C. Peeples, of Atlanta, Ga., and Henry L. Stone, of Louisville, Ky., for appellee.

Before WALKER and BATTS, Circuit Judges, and GRUBB, District Judge.

WALKER, Circuit Judge. This is an appeal from a decree striking an amendment to the plaintiff's (appellant's) bill, which was made under the leave granted by this court in disposing of a former appeal in the same case, and dismissing the bill as amended in so far as the allegations thereof refer to properties in or as to which this court decided that the original bill did not show that the plaintiff had or has the rights or interests which it claimed and sought to have enforced. Western Union Telegraph Co. v. Louisville & Nashville R. Co., 238 Fed. 26, 151 C. C. A. 102. This court ruled, as is shown by its opinion just referred to, that the bill as it was before it was amended stated no facts supporting the conclusion that the plaintiff, at the time the suit was brought, had any right to occupy or use any property of the defendant other than the lines of railway which the latter, in the year 1902, purchased from the Atlanta, Knoxville & Northern Railway Company. The evident purpose of granting to the plaintiff leave to amend its bill was to afford it the opportunity of stating facts and circumstances, if such existed, capable of supporting the conclusions asserted in the bill to the effect that before the bill was filed the plaintiff had acquired the right, existing when this suit was brought, to occupy and use properties of the defendant in Georgia other than that bought by it from the Atlanta, Knoxville & Northern Railway Company. The properties last mentioned will be referred to as the defendant's "new lines," all of them having been acquired by the defendant after its above-mentioned purchase from the Atlanta, Knoxville & Northern Railway Company.

[1] If there existed any basis of fact to support the asserted claims of the plaintiff of the right to occupy and use the defendant's new lines, this could have been sufficiently shown by an amendment to the bill containing a short and simple statement of the ultimate facts upon which the plaintiff seeks relief in that regard, omitting any mere statement of evidence. Equity rule 25 (198 Fed. xxv, 115 C. C. A. xxv). The amendment which was filed was not such a pleading. It was a voluminous document, the copy of which, exclusive of the exhibits attached, fills 85 pages of the printed record before us. By far the larger part of it was made up of statements of law, statutory and customary, and argumentative expressions of a

multitude of legal conclusions, accompanied by copious references to and comments upon court decisions, not omitting insistence upon propositions which have been explicitly overruled, some of them by this court in disposing of the former appeal in this case, and others by the Supreme Court of Georgia in decisions rendered in litigation between the same parties, growing out of an attempt by the plaintiff, by proceedings instituted by it in a Georgia tribunal, after it gave notice of its desire or intention to terminate the agreement between it and the defendant, which was construed by this court when this case was here before, to acquire by condemnation the right to occupy and use the defendant's properties in Georgia, which the plaintiff by this suit claims it already possessed before those proceedings and this suit were brought. The statements of the matters just enumerated were out of place in a pleading, the function of which is to raise or meet issues of law or of fact. Much, if not all, of it could properly have been stricken out as redundant or impertinent matter. Equity rule 21 (198 Fed. xxiv, 115 C. C. A. xxiv).

[2-4] An examination of the amendment with a view of ascertaining what averments of facts it contains, made unduly burdensome by the injection of the matters just mentioned, has not led to the discovery of any such averments which negative the conclusions that the present or former occupation and use by the plaintiff of the whole or any part of the defendant's new lines were under and by virtue of the agreement between the parties, which was referred to and construed in this court's former opinion, and that at the time this suit was brought the plaintiff was without right to continue such use or occupation. In other words, the bill as it has been amended still fails to show that the plaintiff is entitled to all or any part of the rights and easements affecting the defendant's new lines in Georgia, which were claimed by the original and amended bill.

The amendment discloses the following facts, which were not alleged by the original bill:

In January, 1912, after the giving by the plaintiff of notice to the defendant of the desire and intention of the former to terminate the above-mentioned agreement between them, but before the termination of that agreement, and while the plaintiff was still occupying and using the defendant's properties under that agreement, it instituted proceedings for the acquisition by condemnation, under a Georgia statute, of so much of the defendant's railroad rights of way in Georgia as was and is necessary for the plaintiff's use for the purpose of constructing, maintaining, and operating its lines of telegraph thereupon and therealong; the location of the right of way sought to be so acquired being substantially the same as that which then was and is now occupied by the plaintiff's telegraph lines along the defendant's railroads in Georgia. The method of instituting such proceedings prescribed by the applicable Georgia statute (Code of Georgia 1911, § 5206 et seq.) is by the party seeking to condemn, if an agreement with the owner upon the compensation to be paid is not made, serving upon the owner a notice describing the property or franchises and the amount of interest therein sought to be condemned, fixing the time when the hear-

ing will be had on the premises, giving the name of the assessor selected by the party seeking condemnation, and requesting the owner to select an assessor. If the owner, after being served with such notice, fails to select an assessor, the ordinary of the county where the property is situated, or the franchise sought to be condemned is used, is required to select an assessor for the owner, and the two assessors so selected select a third one. Such assessors, after hearing evidence, assess the value and damages, and make a finding or award, which is required to be filed and recorded in the office of the clerk of the superior court of the county. Provision is made for either party, if dissatisfied with the award made, appealing from the award to the superior court, in which, following the taking of such appeal, an issue is required to be made and tried by a jury as to the value of the property taken or the amount of damage done.

The plaintiff instituted condemnation proceedings pursuant to the statute referred to. The defendant did not name an assessor, but, shortly after the institution of the condemnation proceedings, brought a suit in the superior court of Fulton county, Ga., to enjoin those proceedings. A ground stated for granting the injunctive relief sought by the defendant was that it desired to have a telegraph line upon its rights of way, and upon the rights of way and in the location used by the plaintiff, and sought to be acquired by it by condemnation, and that the right of the defendant was paramount and superior to any right of the plaintiff to acquire the easements and rights of way which it was then using. The superior court denied the injunction sought in that suit. It was then by appeal carried to the Supreme Court of Georgia, which court reversed the judgment of the superior court, holding that the plaintiff was subject to be enjoined from condemning the route over the defendant's line which the latter had selected in good faith for use in a telegraph business of its own. Louisville & Nashville R. Co. v. Western Union Telegraph Co., 138 Ga. 432, 75 S. E. 477.

After the rendition of this decision the plaintiff, in November, 1912, sought to amend its condemnation proceeding by shifting the location of the easement desired to the opposite side of the defendant's right of way. By an amendment to its bill or petition in the above-mentioned injunction suit the defendant sought an injunction restraining the plaintiff from proceeding with the condemnation sought under or by virtue of the above-mentioned amendment of the condemnation proceeding. That case again went by appeal to the Supreme Court of Georgia, and on September 20, 1914, that court in that case decided that, under the law of Georgia a condemnation proceeding cannot be amended. 142 Ga. 531, 83 S. E. 126. On April 5, 1915, the plaintiff dismissed its condemnation proceedings against the defendant, and, not having instituted any other such proceedings, on the same day filed its original bill in this case. We are not advised of any authoritative decision of a Georgia court which indicates that, at any time since the occasion arose for the plaintiff to acquire a new right to use in its telegraph business properties of the defendant included in its new lines in Georgia, the plaintiff could not have acquired by condemnation such

rights and easements in those properties as were required for the continued operation of its telegraph business on and over such new lines.

The following is a statement of some of the features of the situation existing at the time this suit was brought, most of the features mentioned being disclosed by affirmative averments made in the bill as it has been amended, and the remainder being such as, in the absence of averments showing that the facts were different, may be presumed to have existed:

The plaintiff commenced to make use of the defendant's new lines in carrying on the former's telegraph business only after acquiring, by express written contract between it and the defendant, the right or privilege of doing so for a limited period of time, which was subject to be shortened at the election of either of the parties to that contract, manifested in a manner specified in the contract. By the voluntary act of the plaintiff alone its rights conferred by that contract were terminated by its giving the defendant written notice, dated August 11, 1911, that one year thereafter said contract would be terminated. It is not made to appear by averment of facts or circumstances that the defendant in any other way than by the making of that contract conferred upon the plaintiff any right to occupy or use the former's new lines or anything included therein, nor that the plaintiff otherwise than by that contract acquired any right or easement in those lines or any part of them. The voluntary termination by the plaintiff of the only right it possessed to occupy and use the defendant's new lines was followed by the former making an attempt to acquire by condemnation the right to continue to use a part of those lines which, under the law of Georgia applicable in the circumstances existing, it was not entitled to acquire in that way. After the plaintiff's lack of right to acquire by condemnation what it sought so to acquire was judicially determined, it sought, in a manner not permitted by the law of Georgia, to acquire by condemnation the right to occupy and use a part of the defendant's new lines other than the part thereof originally unsuccessfully so sought to be acquired. This effort, which failed only because of the improper method pursued in making it, was not followed by any attempt by the plaintiff to avail itself, in the manner prescribed, of the right given to it by the law of Georgia of acquiring by condemnation such rights and easements in the defendant's new lines in Georgia as were required for the continued operation thereon and thereover of the plaintiff's telegraph business.

So long as the plaintiff was making any kind of an attempt to acquire by condemnation a right to occupy and use property of the defendant, and up to the time of the filing of the bill, the defendant, so far as appears, took no action to enforce its demand upon the plaintiff that the latter vacate the former's rights of way, buildings, offices, stations, and premises, and remove therefrom its telegraph poles and wires, and other properties, though the abortive condemnation proceedings instituted by the plaintiff were pending for several years after, by its own voluntary act, the only right it ever had to occupy and use defendant's new lines had ceased to exist. All effort by

the plaintiff to acquire by condemnation such rights or easements in the defendant's new lines as, in the circumstances existing, could be so acquired was abandoned without ever having been made in the manner required by law. It is not made to appear that the plaintiff, before bringing this suit, exhausted the legal remedies which were available, nor that, in the situation disclosed, those remedies were inadequate.

It was under such circumstances that this suit was brought, having for its alternative objects either an adjudication that the plaintiff already possesses the right to continue to occupy and use the defendant's properties as it was occupying and using them at and prior to the bringing of the suit, or, in the event of the court's determining that the plaintiff has not acquired the rights mentioned, that it adjudge that the plaintiff is entitled to acquire those rights and determine the amount of compensation to be paid to the defendant therefor, or, if it shall be adjudged that the amount of compensation to be paid cannot properly be determined in this cause, that the plaintiff be permitted to institute appropriate proceedings for the purpose of fixing and determining such compensation, and that, pending such proceedings, the defendant be restrained and enjoined from interfering with, obstructing, or impeding the enjoyment by the plaintiff of the use for its telegraph business of the defendant's rights of way and premises.

The conclusion already has been stated that the bill as amended does not show that the plaintiff is entitled to have granted its first above-mentioned prayer for relief. As the bill as amended does not negative the exercise by the plaintiff in good faith of its paramount preferential right to use for a telegraph business of its own that part of its new lines now and formerly used by the plaintiff in conducting the latter's telegraph business, the granting of the second alternative prayer for relief would involve a determination that the plaintiff can, by means of the judgment or decree of the court, acquire upon payment of compensation fixed by the court, or pursuant to its order, what the law of Georgia does not permit it to acquire by condemnation. The granting of the third and last alternative special prayer for relief—which also seeks a recognition by the court of the asserted right of the plaintiff to acquire, under or by virtue of the court's judgment or decree, the right to continue to use that part of the defendant's new lines now and formerly used by the plaintiff for its telegraph business—would amount to the court protecting the plaintiff in a continuation of its occupation and use of the defendant's new lines years after it voluntarily relinquished all rights in or to those properties it ever possessed, and postponing the exercise by the defendant of its right of resuming possession and control of its own property for such period of time as may be required to enable the plaintiff to institute and prosecute to a termination proceedings for the purpose of fixing and determining the compensation to be paid for property of the plaintiff of which by no applicable statute it is made subject to be divested in the manner prayed to be pursued. The seeking of such special relief in the circumstances disclosed indicates the assumption by the pleader that a court of equity, when applied to in behalf of

such a plaintiff as the one in this suit is, engaged and situated as that plaintiff was when this suit was brought, is empowered to effect by its judgment or decree the involuntary expropriation of property interests and rights without a compliance with the conditions and procedure prescribed by the only statute which gives the plaintiff the right to acquire the defendant's property by condemnation or involuntary expropriation. We have not been convinced that the equity powers of the court include such a one.

It is not questioned that an owner of property, as against another who, without right to do so, intrudes upon, occupies, and uses that property, may, by standing by and permitting such things to be done, involving expenditures by the intruder in improving the property for the use for which it was taken, estop himself to recover possession of his property, or waive his right to relief for the wrong committed other than an award of compensation for the pecuniary loss or injury to which he is so subjected. Nor is it questioned that the fact that the intruder is a corporation engaged in a service in the continuous and uninterrupted rendering of which the public is interested, and uses the property so intruded upon and improved for the purposes of that service, is a circumstance properly to be considered in supporting the conclusion that the owner has estopped himself to dispossess the intruder or waived his right to resort to remedies which otherwise would be available to him.

The propositions just stated were applied in the case of New York City v. Pine, 185 U. S. 93, 22 Sup. Ct. 592, 46 L. Ed. 820. In that case it was held that the plaintiffs—property owners having the right to prevent an interruption of the natural flow of water through their farms by the defendant, which had not acquired the right to cause such interruption—lost their right to prevent such interruption by so dealing with the defendant while it was effecting such interruption, and incurring heavy expense in so doing, as to show that they were seeking compensation for the injuries they would sustain, and were not insisting upon a right to have the work abandoned. The instant case is not such a one. So far as appears, the defendant has not consented to or acquiesced in the plaintiff's entry upon and use of the former's new lines, except in so far as such entry and use for a limited period of time was consented to and provided for by the written contract already several times mentioned. The plaintiff's occupation and use, so far as they have been consented to or acquiesced in by the defendant, have been permissive, secured to it by a contract, from the very existence and terms of which it is to be implied that, upon the expiration of the period for which the occupation and use were contracted for, the right would accrue to the defendant to come into possession and control of its properties, up to that time rightfully occupied and used by the plaintiff. Since the termination by the plaintiff's voluntary act of the rights it formerly had, the defendant has been continuously asserting its right to repossess itself of its own property, and has had no dealing with the plaintiff which indicated that it did not insist upon that right, or that it consented to a continuance of the occupation and use of its properties upon the payment of compensation therefor.

[5, 6] We do not understand that the fact that the occupant of property by permission or as a tenant is a public service corporation exempts it from the operation of rules of law which are applicable when the respective parties brought into such a relation with reference to property are strictly private ones. It is a familiar rule applicable to such a relation that one who occupies permissively or as a tenant is estopped from disputing the title of his lessor or licensor, that the former must first surrender possession before assuming an attitude of hostility to the latter's title, that a possession cannot at one and the same time be both permissive and adverse, and that a permissive possession cannot be changed into an adverse or hostile one without notice to the party who occupies the position of lessor or licensor. Duncan v. Guy, 159 Ala. 524, 49 South. 229. Contentions advanced in behalf of the plaintiff in this case cannot be sustained, without deciding that it is exempt from the operation of the rule mentioned.

[7] The averments of the bill as amended indicate the final voluntary abandonment by the plaintiff of any effort or purpose to acquire by condemnation under the Georgia statute such rights in the defendant's new lines as, under existing circumstances, could be acquired in that way. That right is a purely statutory one, and the enforcement of it is subject to a compliance with the conditions and requirements prescribed by the statute. It is, to say the least, questionable whether that statutory right could be enforced in such a suit as the instant one; the initial proceeding required when condemnation is sought not being a suit inter partes before a judicial tribunal, no such suit coming into existence until after an award by assessors has been made and an appeal therefrom taken, and the initial steps prescribed being such as cannot be taken by or in the court in which this suit was brought. But we do not understand that it is a purpose of this suit to secure the enforcement of that statutory right or to afford the plaintiff further opportunity to enforce it, in the meantime protecting it in the continuance of the occupation and use of the defendant's new lines which commenced under and by virtue of the terminated contract.

The asserted right by this suit sought to be enforced is that of continuing the just-mentioned occupation and use of the defendant's new lines, a right which, under circumstances which, the contrary not appearing, may be presumed now to exist, the plaintiff cannot acquire under the Georgia condemnation statute, as that statute has been construed in a case to which the plaintiff and the defendant in this suit were parties. This suit is an effort by the plaintiff to keep what it holds—not one to get what it can under the Georgia condemnation statute. It is like the case of Western Union Telegraph Co. v. Penn. R. R., 195 U. S. 540, 572, 573, 25 Sup. Ct. 133, 49 L. Ed. 312, 1 Ann. Cas. 517, in that it invokes the aid of the court to enable the plaintiff to continue to occupy and use the defendant's railroad without its consent, or that of some predecessor in title. It was decided in that case that this could not be done, except under the power of eminent domain and upon payment of compensation. It appears that there was no eminent domain statute that might have affected the result in that case. In the instant case the plaintiff has not, in the way prescribed,

sought the relief available to it under an existing condemnation statute, and, without having the right to do so, is trying to keep what, under existing circumstances, it cannot acquire by condemnation. So far as results are concerned, the difference between the two cases does not seem to be a material one.

We are not of opinion that the averments of the bill as amended show that anything has happened which had the effect of conferring upon the plaintiff the rights which it asserts. Nor are we of opinion that, such rights not having been acquired as a result of any conduct of or dealing between the parties, it is within the power of the court as a court of equity to divest or expropriate involuntarily property rights or interests of the defendant and vest them in the plaintiff upon the latter paying such compensation as the court may adjudge to be proper and commensurate with the loss or injury resulting to the former. The conclusion is that upon no ground urged or disclosed was the decree appealed from so erroneous as to be subject to reversal.

That decree is affirmed.

BATTS, Circuit Judge, not participating in the decision.